THE STATE NATIONAL BANK et als. v. J. M. HARRIS et als.

*Statute of Limitations—Partial Payment.*

1. The effect of §172 of *The Code*, is to leave the law as it was prior to the adoption of the Code of Civil Procedure as regards the effect of a partial payment in removing the bar of the statute of limitations.

2. The fact that the maker of a note has a claim against the holder, which the holder endorses as a credit on the note without the assent of the maker, will not be such a partial payment as will rebut the statute of limitations, but an agreement to apply one existing liability to another, is such a partial payment as will stop the operation of the statute, although the endorsement is never actually made on the note.

(*Green* v. *The College*, 83 N. C., 449; *Woodhouse* v. *Simmons*, 73 N. C., 30; *Hewlett* v. *Schenck*, 82 N. C. 234; *Riggs* v. *Roberts*, 85 N. C., 151; cited and approved).

CIVIL ACTION, tried before *Connor, Judge*, at April Civil Term, 1886, of WAKE Superior Court.

This action is upon a bond or promissory note under seal, made by the defendant James M. Harris, principal, and the other defendants, his sureties, to John Gatling, one of the plaintiffs, for $400, due December 15, 1881, and deposited at the plaintiff Bank as collateral security for money loaned. The suit was commenced on August 1st, 1885, and the defence mainly relied on and brought up in the appeal, is the bar of the statute of limitations, pleaded by the sureties. To rebut this, the plaintiffs allege a partial payment of $286.02 to have been made by the defendant Bridgers, on or about March 5, 1882, under §172 of *The Code*. The testimony upon this point was as follows: The plaintiff Gatling gave his note for $262.30 for value, to one T. V. Hill, who endorsed it to the defendant Bridgers, by whom it was again endorsed to Norris, Wyatt & Taylor, who brought suit on the note against the maker and endorser Bridgers, and at August Term, 1883,

recovered judgment against the latter alone.  Execution issued thereon, and on March 5th, 1884, was satisfied by payment in full by Bridgers.   Thereupon, it was agreed between him and Gatling, that the amount so paid should go and be appropriated as a part payment of the note now in suit, and be credited thereon.

This credit was not in fact so entered, though repeatedly demanded, and with assurances that it should be done.

The note sued on, though payable to Gatling personally, was the property of Annie M. Parker, of whom the former was attorney in law and fact until the winter of 1884–'5, but this was not known to the sureties.   The said Annie M. and her husband have been allowed to intervene in the action and assert her claim to the security.

The second article of the complaint alleges the payment by Bridgers, on March 5, 1884, of $286.02, and only the residue of the debt is demanded.   The answer of Bridgers denies that upon the facts any payment has been made to interrupt the running of the statute, and insists upon its protection.   Of the three issues submitted to the jury, two responses, declaring the said Annie M. to be the owner of the note, and the defendants W. S. Harris and Bridgers to be sureties, were by consent, and the remaining one: "Did defendant T. B. Bridgers pay on said bond $286.02, or any other sum, on or about 5th of March, 1884?" was answered in the affirmative.   The defendants insisted that there was no evidence to sustain an affirmative finding upon this issue.   This instruction was in these words:

"The Court charged the jury, that if they believed it was understood and agreed between Gatling and Bridgers, prior to 15th of December, 1884, that the amount due by Gatling to Bridgers should constitute a payment on the note in suit, they should find the second issue in the affirmative, and they should consider all the facts and circumstances in evidence in coming to a conclusion.   That the burden of proof

was on the plaintiffs, and it made no difference that the note was the property of Mrs. Parker, she having by her answer ratified whatever Gatling had done in regard to the note." To this charge the defendants excepted. There was a judgment for the plaintiffs; and the defendants appealed.

*Mr. R. H. Battle,* for the plaintiffs.
*Messrs. Thos. M. Argo* and *Sam'l Wilder,* for the defendants.

SMITH, C. J., (after stating the facts). The sole question to be determined, is as to the effect of the agreement that the indebtedness incurred by Gatling to his surety upon the latter's discharge of the execution, should be applied to that in possession of the Bank, and the amount entered thereon as a credit, in removing the statutory defence arising from the lapse of time. Was it equivalent to an actual payment within the meaning of §172 of *The Code,* which leaves in force the previous law as to the effect of a part payment of a debt? *Green* v. *The College,* 83 N. C., 449.

The present controversy assumes a very singular aspect. The creditor is not refusing to give effect to the agreement to consider his debt paid *pro tanto,* but declares that result to have been brought about, as if what is termed an executory, had become an executed contract, accomplished by the entry of the credit. The debtor seeks to repudiate his own action, and deprive himself of what it is admitted he is entitled to. Undoubtedly, if the relations of the parties were reversed, and the statutory obstruction was not in the way of the debt to be reduced, while it did take away from the surety debtor his remedy by action on the promise of his principal, whether implied or express, there would be no hesitancy in treating the case a direct reducing of the plaintiffs' demand, so that no detriment should come to him from delay. Why should the result be different for the benefit of a debtor repudiating his contract and against

the creditor willing and ready to comply with his own? No reason occurs to us for a change in applying the rule in each case. It is not the mere endorsement of a credit upon the note, even when supported by a counter-claim by the holder, which will have the effect of reviving the liability. *Woodhouse* v. *Simmons*, 73 N. C., 30; but an *actual payment* made and received as such, of which the entry is evidence, as the fact may also be otherwise shown.

"A partial payment," to repeat the words used in the opinion in *Hewlett* v. *Schenck*, 82 N. C., 234; "though the evidence need not be in writing, being an act, and not a mere declaration, revives the liability, because it is deemed a recognition of it and an assumption anew of the balance." To the same effect in *Riggs* v. *Roberts*, 85 N. C., 151.

This recognition under former adjudications, and by force of the qualifying words of the statute, which requires a new promise or acknowledgment to be in writing, is equally efficacious in preserving or restoring the remedy when lost by lapse of time. Why should not like consequences flow from an agreement to apply one existing debt to another, even in case of a neglect to make the promised entry on the security? Is it not as clear and positive an admission of responsibility for the residue, as if the money due from Gatling had been handed to Bridgers in extinguishment of his claim for money paid as surety, and immediately thereupon it had been handed back to the former in part payment of his bond? Is not the same result reached in either case, and the payment equally effectual?

The proposition in general terms is this: A has a bond against B, and becomes indebted to B in a smaller sum. They meet and agree that the claim of B shall be discharged by appropriating what is due from him to A to what he owes A. It is not a contract for something to be done in the future, but a present self-executing mutual contract, which at once, for all practical legal purposes, as between

them, extinguishes the one and reduces the other debt. It operates, *eo instanti*, and so would the transaction be interpreted, should either undertake to enforce his satisfied demand. Had Bridgers been a principal and not a surety, so that his liability would continue for ten years, while his counter-demand would be obstructed after three years, Gatling would not be allowed to recover his unreduced debt, but would be entitled to what remains only. The transaction between them would only be deemed a partial payment of the larger demand, and if so, why not for the benefit of the other party?

In our opinion, it is a payment, and in the meaning of the statute such a recognition of the debt as removes the bar.

There is no error, and the judgment must be affirmed.

No error.                                      Affirmed.