WINNIFRED YOUNG v. J. R. ALFORD, et al.

*Action on Note—Statute of Limitations—Payments— Proof of Payments — Application of Payments — Endorsements—Trial.*

1. In the trial of an action on notes where the plea of the Statute of Limitations has been made, it is not incumbent on the plaintiff to prove that payments alleged to have been made thereon were made by the debtor with the intention of continuing the notes in force or reviving them, since the law presumes such intention from the fact of payment.

2. Where, in the trial of an action on notes to which the Statute of Limitations was pleaded, and in which the issue was whether there had been a payment continuing the note in force, it appeared that the plaintiff got a quart of brandy from the debtor, who told her to "let it go on the notes,' and the plaintiff, valuing the brandy at 75 cents, applied it as a credit on three notes, 25 cents on each note; *Held,* that it was proper to refuse to instruct the jury that, unless they found that the debtor authorized plaintiff to estimate the value and to divide it into three parts for credit on the three notes, they should return a verdict for the defendant. In such case it was the *payment* and not the *amount* thereof that revived the debt, and being a payment, and defendant not having directed how it should be applied, the plaintiff had the right to make the application and to divide it by crediting a part on each note.

3. The date when a payment is *made* and not when it is *entered* on the note, governs as to its effect under the Statute of Limitations.

4. An endorsement of a payment on a note is not in itself evidence of the payment, unless it is shown to have been made before the bar of the statute arose.

5. Where there is any evidence at all, however slight, of a material fact, it is the better and safer rule to submit the issue to a jury, and a verdict rendered thereon will not be disturbed.

CIVIL ACTION, on notes and for the foreclosure of a mortgage securing the same, tried before *Coble, J.,* at Spring Term, 1895, of FRANKLIN Superior Court. There was a verdict for the plaintiff and from a judgment thereon the defendants appealed. The facts are fully stated in the opinion of Associate Justice FURCHES.

*Messrs. C. M. Cooke* and *T. W. Bickett,* for plaintiff.
*Mr. F. S. Spruill,* for defendants (appellants).

FURCHES, J.: This is a civil action of debt evidenced by three notes secured by mortgage, and a foreclosure of the mortgage. The execution of the notes and mortgage and their non-payment are admitted. But defendant pleads and relies on the Statute of Limitations as a bar to plaintiff's action. The notes are under seal and were made in 1874, and this action was commenced in the Spring of 1892. There had been several payments made and endorsed on these notes, but none of them had been made within ten years before the commencement of the action, except an endorsed payment on each one of them of 25 cents bearing date the 5th of November, 1890. The defendant contends that his intestate made no such payment as the last mentioned. And this is the issue. If such payments were made the plaintiff is entitled to judgment, and if not made, the defendant is entitled to judgment.

It was in evidence that the plaintiff and defendant's intestate were brother and sister, and that plaintiff is quite an old lady, and that these endorsements of 25 cents are in the handwriting of one J. H. Alford, a son of plaintiff, who was acting as her agent at the time they bear date. Upon this testimony the plaintiff offered these endorsements in evidence. Defendant objected and his objection was sustained.

The plaintiff then offered as a witness Mrs. S. B. Harris who testified as follows: "I knew Simon Alford, don't remember when he died, it has been about three years ago, he was her uncle, he was in the habit of visiting at their house; the last time he visited was the year he died; don't remember how long before he died; at the last time he had a conversation with witness' mother about losing his sheep and horses; talked about crediting some brandy; spoke of the notes; he said, credit the brandy on his note, that would be the only way it would ever be paid; he brought it up, talking about paying them; said, send down there and get brandy and credit on his notes; it would be the only way he could ever pay it."

Plaintiff then introduced J. H. Harris, who testified as follows: "I am a son-in-law of plaintiff; knew Simon Alford; Mrs. Young is at home; saw Alford at Mrs. Winnie Young's not long before he died; Simon had been over to the still; witness stayed with Mrs. Young about three years after he was married. Simon Alford was there; Winnie said she wanted brandy but she didn't have the money, and Simon said, why don't you send down and get some brandy from him; she said she didn't have the money, and he said he owed her more than he would ever pay her; you send down and get the brandy and let that go on—he didn't say on what—he said he owed her more than he would ever pay her in his life-time, but there would be enough left after he was dead to pay her; she said she would never trouble him as long as he lived; went to Simon's for Winnie after Simon got sick; when she got ready to start she got a quart of brandy, took out some money and said she thought she would pay him for the brandy, and he said no, that he owed her more than he would ever pay her, and to let that go on; she said

she thought he needed some money; brandy was worth 75 cents per quart."

D. E. Harris testified that the plaintiff, Winnifred Young, had been feeble for a good many years. The court then allowed these endorsements to be read to the jury and the defendant excepted.

These notes being barred by the statute, they could only be revived by a written acknowledgment or a payment made on them by defendant's intestate. There is no claim that he revived them in writing. And the question is, did he do so by making a payment in 1890 as alleged by plaintiff? The jury have found that he did, and this ends the matter, unless there was error committed by the court on the trial. The defendant says there was, as is pointed out by his exceptions.

Defendant's 1st prayer for instructions asked the court to charge that where the Statute of Limitations is pleaded, it devolves on the plaintiff to show that his action was not barred. This prayer was given.

In defendant's 2d prayer for instruction he asked the court to charge "That unless the jury are satisfied that defendant's intestate intended that the alleged payments, if he made them, should renew his obligation upon the bonds, they will return a verdict for the defendant." This prayer was refused and defendant excepted. In this there was no error. If the payment was made, and nothing else appearing, the law presumed the intention, and it was not necessary for the plaintiff to prove what the law presumed from the fact of payment. *Woodhouse* v. *Simmons*, 73 N. C., 30 ; *Williams* v. *Alexander*, 6 Jones, 137.

In defendant's 3d prayer he asked the court to instruct the jury as follows : " It is not the mere endorsement of a credit upon the notes by the holder which will have the effect of reviving the liability, but an actual payment made

and received as such; and unless the jury believe that Simon Alford did let plaintiff have the brandy, intending it as a payment on these notes and that plaintiff received it, intending it as such payment, and that the brandy was an actual payment, they will return a verdict for the defendant." This instruction was given. But we bring it forward as a part of his Honor's charge.

Defendant's 4th prayer for instructions was as follows: "In order to make specific articles a payment, they must be received as payments by the holder of the note, and intended as payments by the maker, or by subsequent agreement between the parties applied as such. This instruction was given. But we bring it forward for the same reason that we brought forward the third—as a part of his Honor's charge.

Defendant's 5th prayer was as follows: A payment, if made at all can only be made by the debtor, and in order to entitle the plaintiff to recover she must show to the satisfaction of the jury that defendant Simon Alford authorized her to estimate the value of the brandy herself, and to divide it into three parts, in order to credit the bonds with 25 cents each, with the view of bringing them back into date. That this act was the mutual act of the parties, and not the act solely of the plaintiff, and unless the jury do so find the facts, they will return a verdict for defendant." This prayer was refused and the defendant excepted.

The issue in this trial is as to whether the brandy was a payment, and not as to whether the plaintiff had priced it too high or too low. The only evidence as to its value was 75 cents. But if it was only worth half that amount, and it was *made as a payment*, it was just the same in effect, so far as reviving the debts, as if it had been worth twice as much. It was *the payment* and not the amount that revived the debt. And if it was a payment, defendant not having

made the application, the plaintiff had the right to make it. *Moss* v. *Adams*, 4 Ired. Eq., 42; *Sprinkle* v. *Martin*, 72 N. C., 92; *Moose* v. *Barnhardt*, 116 N. C., 785; *Long* v. *Miller*, 93 N. C., 233. And if the plaintiff had the right to make the application, she had the right to divide it and to credit a part on each note. *Sugg* v. *Watson*, 101 N. C., 188; *Wittkowsky* v. *Reid*, 84 N. C., 21.

Defendant's 6th prayer is as follows: " Unless there is evidence, outside of the credits themselves, that they were put on the bonds the day they purported to be put there, and unless there is evidence further sufficient to satisfy you as to the handwriting of such endorsements, the defendants are entitled to your verdict and will answer the issue as to the Statute of Limitations, ' Yes.' " The court refused this prayer for instructions, and committed no error in doing so. The effect of the prayer was to make the Statute of Limitations depend upon the date of the entry or endorsement on the notes, and not on the payments. The endorsements were not payments, and did not revive the notes. This was done by the payments. *Woodhouse* v. *Simmons*, and *Williams* v. *Alexander*, *supra; Bank* v. *Harris*, 96 N. C., 118. The endorsements of themselves were not even evidence of payments, as was held by the court on the trial below, when his Honor refused to allow them to be read in evidence upon proof of handwriting, when first offered. But when there was evidence tending to prove the payment, they then become competent evidence to show the application. And they were then allowed to be read in evidence.

It is true that a different rule prevails where an endorsed payment appears to be made before the statute bars, and when it was against the interest of the party making it. *Woodhouse* v. *Simmons*, *supra*. In this case, if it is shown that the endorsement was made at the time it bears date,

that is, if it is shown to have been made before the statute had become a bar, the endorsement then becomes evidence of the payment. *Woodhouse* v. *Simmons*, and *Williams* v. *Alexander*, *supra*. But still, it is not the endorsement which revives the note, but the payment (*Bank* v. *Harris*, *supra*) and the endorsement in such cases as this becomes *evidence* of the payment. *Williams* v. *Alexander*, *supra*.

The defendant's 8th and 9th prayers were given with very slight modifications, and defendant was not prejudiced by these modifications. Besides, the modifications were proper, and the law involved in them has not been discussed in what we have said above.

The defendant's 10th, 11th, 12th and 13th prayers were properly refused by the court. The tenth is as to whether the brandy was a payment, and as to its value. The 11th is as to plaintiff's right to "split" it up, and apply it as a payment on the three notes; and the 12th is also as to the right of plaintiff to make the application—all of which have been discussed and disposed of in what has already been said

The 13th prayer presents the main point in the case, as to whether there was any evidence of payment, or any such evidence as should have been submitted to the jury. If there was not, the defendant was entitled to this prayer. *Wittkowsky* v. *Wasson*, 71 N. C., 451; *State* v. *Vinson*, 63 N. C., 335. This rule is well established, but where the evidence is slight, there is often difficulty in making the application. And in such cases it is the safe rule to submit the question to the good sense of the jury. *State* v. *Allen*, 3 Jones, 257. It is true the evidence of this payment was not very positive. But there was certainly some evidence—there was more than a scintilla—more than there was in *Wittkowsky* v. *Wasson*, or *State* v. *Vinson*, *supra*—more than would authorize the court in saying

there was no evidence and to take the issue from the jury.
And had his Honor done so, he would have committed an
error which would have entitled the plaintiff to a new trial.
This being so, it cannot be error in the court to submit
the issue of payment to the jury.   And as the jury have
found the payment, and as we find no error in the record,
the judgment must be affirmed.

This  opinion  does  not  overrule the case of *Young* v.
*Alford*, 113 N. C., 130.   It was before this Court at that
time on quite a different state of facts.   It then presented
two questions—one as to whether the endorsed payments
after the claim is barred by the statute were evidence of
actual payment, and the Court held they were not.   This
was held to be so on the  trial below, and  this question is
not presented by this  appeal.   But in the  discussion, we
have sustained that ruling.   The other question was as to
whether  the  indebtedness, which  would be a counter-
claim, would rebut the statutory bar, or revive the indebt-
edness when barred.   That question  is  not presented  by
this appeal.   But if it were, we would sustain that ruling.
. The Judgment is Affirmed.