BOND v. WILSON.

(Filed December 20, 1901.)

1. NEGOTIABLE INSTRUMENTS—*Payments—Limitations of Actions.*

　　The payments endorsed on a note are no evidence as to the time when the payments were made.

2. NEGOTIABLE INSTRUMENTS—*Payments—Limitations of Actions.*

　　The endorsed payments on a note, made after the statute of limitations has run against the note, are no evidence that the payments were made.

3. PRINCIPAL AND AGENT—*Evidence—Sufficiency.*

　　The evidence herein is not sufficient to show that the agent of the plaintiff was also the agent of the defendant.

ACTION by Lou. N. Bond, Rebecca B. Adams and others against J. W. Wilson, heard by Judge *W. B. Council* and a jury, at Fall Term, 1900, of the Superior Court of BURKE County. From a judgment for the plaintiffs, the defendant appealed.

*Avery & Avery, E. J. Justice,* and *J. T. Perkins,* for the plaintiffs.

*Avery & Ervin, Osborne, Maxwell & Keerans, T. N. Hill,* and *Bynum & Bynum,* for the defendant.

MONTGOMERY, J. The defendant, both in his answer and in his testimony on the trial, admitted that the endorsed credit of date June 3, 1884, on one of the bonds, and that of August 12, 1884, on the other, were correct, both as to the amounts and dates. The Statute of Limitations, subsection 2 of section 152 of The Code, began to run, then, from those dates, and the suits on the two bonds (consolidated in this action) were commenced on the 15th of August, 1896. The

BOND *v.* WILSON.

defendant set up that statute as a bar to the actions, averring that the endorsement of a credit of date September 11, 1890, on one of the bonds, and the endorsement on the other of a credit of date August 7, 1893, were entered without his privity, and that he made no such payments, nor any other payments on either bond since those of 1884. It became necessary, then, for the plaintiffs to show by evidence other than the endorsements themselves that the endorsements of the credits of 1890 and 1893 were made at the dates upon which they purport to have been made, or at least that they were made within ten years next after the payments of 1884 and also within ten years before the action was begun, before they could be read as evidence of payments on the bonds. *Williams v. Alexander,* 51 N. C., 137; *Woodhouse v. Simmons,* 73 N. C., 30; *Grant v. Burgwyn,* 84 N. C., 560; *Young v. Alford,* 118 N. C., 215. The defendant insisted that it was necessary to prove actual payments for which the credits were endorsed, and that the endorsements themselves were not evidence of payment. That would be the rule only in cases where the dates of the endorsed credits themselves show that they were entered after the Statute of Limitations had become a complete bar. In such cases only actual payments have to be proved. *Young v. Alford, supra.*

It was admitted by the defendant that the credits were in the handwriting of S. McD. Tate, now deceased, and that he was the authorized agent of the plaintiffs for the collection of these bonds; and F. P. Tate, a witness for the plaintiffs, testified that he saw his father, the plaintiff's agent, make the endorsements of credit at or about the times they bear date. But this witness also testified that the defendant was not present, and that no money was paid. That evidence, considering it as true, destroyed the presumption of payment as evidenced by the endorsed credits, nothing else appearing.

BOND v. WILSON.

However, the plaintiffs then undertook to prove that the plaintiff's agent was also the agent of the defendant, and that he had authorized Mr. Tate to pay, out of certain funds which he had control of for the defendant, the amounts of the credits. Certain sheets of paper found among the effects of the deceased agent, after his death, and in his handwriting, in the nature of an account as to his transactions with the defendant in respect to the disposition of the proceeds of sales of certain real estate in which the defendant was equally interested with the agent Tate, were introduced in evidence. Upon these sheets it appeared that there were charged to the defendant moneys corresponding in amount and dates of entry with the payments of 1884, and to the endorsed credits of 1890 and 1893. They were introduced as general evidence in the case, over the objection of the defendant. They were not in themselves evidence of any agency from the defendant as to the payments of 1890 and 1893, and if they were evidence for any purpose it was only to corroborate the witness F. P. Tate as to his statement about the endorsements. The defendant admitted that he had instructed Tate to apply certain amounts from the real estate transaction referred to in this opinion to the payment of the bonds, and that those amounts were the basis of the endorsed credits of 1884; but he denied in his answer that he had authorized him, or had given him instructions to apply any other amounts of his money in Tate's hands to any other payments on the bonds; and his testimony was to the same effect. We do not find any testimony in the whole record to the contrary, and the defendant was entitled to have his special prayers 19 and 20 on the issue of the Statute of Limitations given to the jury, and because they were refused by his Honor, there must be a

New Trial.

(CLARK, J., did not sit on the hearing of this case.)

BOND v. WILSON.

DOUGLAS, J., concurring: There is one part of the opinion of the Court which I think is liable to misconstruction. It is as follows: "The defendant insisted that it was necessary to prove actual payments for which the credits were endorsed, and that the endorsements themselves were not evidence of payment. That is, would be the rule only in cases where the dates of the endorsed credits themselves show that they were made after the Statute of Limitations had become a complete bar." I fear this might be construed into meaning that the mere endorsement, if made before the statute had become a complete bar, would in itself create a presumption of payment. To this I could not assent. If, however, the Court means, as I am told it does, that such an endorsement would not of itself raise any presumption of a corresponding payment, but would simply be some evidence to go to the jury tending to prove payment, I agree with the opinion.

My views may be briefly stated as follows: Section 152 of The Code provides that an action upon a sealed instrument against the principal thereto must be brought in ten years. Section 172 is as follows: "No acknowledgment or promise shall be received as evidence of a new or continuing contract, whereby to take the case out of the operation of this title, unless the same be contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest." It will be seen that the statute uses the word *payment,* and therefore a mere endorsement of a payment *not* signed "by the party to be charged thereby," can never amount to anything more than mere evidence of payment. Our decisions hold that if such endorsement is made after the note or bond is barred by the statute, it is of itself not even evidence of payment; and that if made before such bar, it is evidence of such payment simply because it is supposed to have been entered by the

creditor or his agent, as he holds the paper, and it is there-
fore a declaration against his own interest, inasmuch as it
tends to lessen the amount due on the note.

But if, on the contrary, it turns out, as in the case at bar,
that such an endorsement is the only thing that brings the
note within the statute, then such an endorsement is *not*
against the interest of the holder, but becomes his own decla-
ration in his own favor.　*Cessat ratione cessat ipsa lex.*

As it is the fact of payment itself, and not the mere en-
dorsement that prevents the bar of the statute, the burden
of proving payment in such cases always rests upon the
holder of the paper.　This comes within the general rule
that where the Statute of Limitations is pleaded, the bur-
den rests upon the plaintiff of bringing his claim within
the statute, as otherwise he has no cause of action.

FURCHES, C. J.　I concur in the concurring opinion.